IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECCA MCPHERSON                                                    PLAINTIFF

  VS.                          Civil No. 2:17-cv-02229-PKH-MEF

NANCY A. BERRYHILL, Commissioner,                                    DEFENDANT
Social Security Administration

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rebecca McPherson, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act (the "Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405 (g).

### PROCEDURAL BACKGROUND

Plaintiff filed her applications for SSI and DIB on February 10, 2015, due to arthritis in her left shoulder and left knee, degenerative joint disease, right knee cap problems, carpel tunnel in both hands, degenerative back problems, right foot Achilles tendonitis, high blood pressure, and anxiety. (ECF No. 12, pp. 29, 303). Plaintiff alleged an onset date of November 20, 2005. (*Id*.). The ALJ noted Plaintiff was found not disabled by a previous Administrative Law Judge decision dated January 13, 2014, and that decision had not been appealed, making the period at issue in this decision from January 14, 2014 to October 6, 2016. (*Id*., p. 29). Her claims were denied initially on April 3, 2015, and upon reconsideration on July 17, 2015. (*Id*., pp. 13, 92, 96). An administrative hearing was held on August 3, 2016, before the Hon. Edward M. Starr. (*Id*., p. 49).

1

Plaintiff appeared in person and was represented by counsel, John Seidlitz. (*Id*.). A vocational expert ("VE"), Deborah Steele, also testified at the hearing. (*Id*.).

By written decision dated October 6, 2016, the ALJ found Plaintiff's obesity, degenerative joint disease, degenerative disc disease, hypertension, and shoulder and knee problems to be severe, but that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (*Id*., p. 31). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 C.F.R. §404.1567(a) and 416.967(a), except she is limited to occasional climbing, balancing, crawling, kneeling, stooping and crouching; and occasional overhead reaching bilaterally.

(*Id*., p. 33-40).

With the assistance of the VE, the ALJ then determined Plaintiff would be unable to perform any past relevant work (*Id*., p. 40); however, the ALJ found Plaintiff could perform the requirements of the representative occupations of: Call Out Operator (DOT No. 237.36-014), with 14,950 jobs in the national economy; Surveillance System Monitor (DOT No. 379.367-010), with 16,030 jobs in the national economy; or, Document Preparer (DOT No. 249.587-018), with 92,785 jobs in the national economy. (*Id*., p. 20). The ALJ also found Plaintiff could perform work at the semi-skilled level such as: Telephone Solicitor (DOT No. 299.357-014), with 242,430 jobs in the national economy; Information Clerk (DOT No. 237.367-022), with 623,160 jobs in the national economy; or, Insurance Clerk (DOT No. 219.367-014), with 135,568 jobs in the national economy. (*Id*.). The ALJ found Plaintiff had not been disabled under the definition of the Act from January 14, 2014 through the date of his decision. (*Id*.).

On October 10, 2017, the Appeals Council denied Plaintiff's request for review. (*Id*., pp. 6-11). Plaintiff then filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs. (ECF Nos. 15, 16). The case is ready for decision.

**APPLICABLE LAW**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least 12 consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

3

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only upon reaching the final stage does the fact-finder consider the Plaintiff's age, education, work experience and residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

Plaintiff raises three issues on appeal: (1) whether the ALJ failed to fully develop the record; (2) whether the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; and, (3) whether the ALJ erred in her RFC determination. (ECF No. 15). Following a thorough review of the record, the undersigned agrees that the ALJ's RFC determination is not supported by substantial evidence.

Plaintiff argues the ALJ committed error by relying upon the residual functional capacity assessment provided by a non-treating non-examining medical consultant, Dr. Krishnamuathi, and not soliciting RFC opinion evidence from Plaintiff's treating orthopedic surgeon, Dr. Steven O. Smith. (ECF No. 15, p. 7,14).

A disability claimant has the burden of establishing his RFC. *Vossen v. Astrue*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704

4

(8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff has an extensive history of treatment for impairments of her right foot, both shoulders, both knees, and her lumbar spine. Plaintiff sought treatment as early as February 2014 for low back pain, pain in both knees, and pain in both hips. (ECF No. 12, p. 455). Plaintiff began treatment with Dr. Steven Smith in August 2014, originally seeking care for her right foot and ankle pain after wearing a boot for six weeks following a trip to the emergency department for right foot pain and swelling. (*Id.*, pp. 487, 492). Plaintiff reported a history of surgery to repair a congenital club foot, with recurrent and progressively worsening pain. (*Id.*, p. 493).

Dr. Smith first treated Plaintiff conservatively, with an ankle joint injection. Just two months after beginning treatment, Dr. Smith determined Plaintiff's right foot required surgery and a right tibiotalar calcaneal arthrodesis with Biomet hindfoot fusion was performed on October 8, 2014. (*Id.*, pp. 426, 493). On December 18, 2014, Plaintiff saw Dr. Smith and reported that while her ankle was improving after her surgery, she still had pain in her left shoulder and right knee. (*Id.*, pp. 503-504). X-rays of all three areas showed type 3 acromion in Plaintiff's shoulder, a hypoplastic and lateral tracing patella in her knee, and ankle arthrodesis with tibiotalocalcaneal fusion rod in her ankle. (*Id.*).

A lumbar spine MRI was done on March 20, 2015, and it revealed bulging at the L5-S1 level with disc desiccation, posterior disc bulge and left foraminal narrowing, as well as a disc bulge and degenerative facet changes with foraminal stenosis bilaterally at the L4-5 level. (*Id.*, pp. 442, 510). Dr. Smith referred Plaintiff for lumbar epidural steroid injections to treat her back pain, fit her with a knee brace, a custom insole for her right foot, and continued conservative treatment for her pain with medications. (*Id.*, pp. 504, 506, 510).

Plaintiff continued to receive epidural injections, with limited success, and she was sent for a consultative examination with Dr. Joseph W. Queeney in September 2015.  (*Id*., pp. 653, 680).  Dr. Queeney opined that Plaintiff probably needed surgical treatment for her back, but he recommended that she try to get her BMI under 35 before proceeding and asked that she try to lose weight and return in six months for a weight check.  (*Id*., p. 685).

Dr. Smith performed surgery on Plaintiff's left shoulder in December 2015, and Plaintiff received physical therapy after the surgery.  (*Id*., pp. 692, 704, 712, 719, 742, 743, 723, 740, 746).  Dr. Smith performed surgery on Plaintiff's right shoulder just three months later in March 2016, and Plaintiff continued with physical therapy.  (*Id*., pp. 785, 793, 797, 802).  In May 2016, Dr. Smith gave Plaintiff an injection and knee brace for her left knee, which he noted was becoming her biggest issue.  (*Id*., p. 837).

At the administrative hearing held on August 3, 2016, Plaintiff testified that Dr. Smith was scheduled to perform a full knee replacement for her left knee on the 22nd of that month.  (*Id*., pp. 59-60, 74).  The ALJ, however, never obtained medical records for that surgery or for any treatment provided by Dr. Smith beyond May 2016.  (*Id*., p. 837).

Plaintiff was treated by Dr. Smith both clinically and surgically for orthopedic impairments to both knees, both shoulders, her right ankle, and her lower back starting in August 2014 and continuing through the date of the ALJ's decision.  (*Id*., pp. 36-39).  Despite this long treatment history, including multiple surgeries performed and more surgery anticipated, Dr. Smith's opinion regarding Plaintiff's functional limitations was never solicited by the ALJ.  While an ALJ is under no specific duty to procure an RFC assessment from each treating physician, the ALJ must base his opinion on some medical evidence that addresses Plaintiff's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d at 1092; *See Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002) (court may remand for taking of further evidence where ALJ fails to develop record

fully); and, *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir.2001) (reversible error for ALJ not to order consultative examination where such evaluation is necessary to make informed decision).

In making the RFC determination, the ALJ gave great weight to the opinion of Dr. Subramaniam Krishnamuathi, a non-examining medical consultant who in August 2016 opined Plaintiff could sit for two hours uninterrupted and up to six hours of an eight-hour workday, and she could stand and/or walk for 10 to 30 minutes uninterrupted and up to one hour of an eight-hour workday.  (ECF No. 12, pp. 39, 857).  Dr. Krishnamauthi further opined that Plaintiff could frequently (i.e., one-third to two-thirds of an eight-hour workday) use her upper extremities for reaching, handling, fingering, feeling, and pushing/pulling, and she could frequently use both of her feet for operation of foot controls.  (*Id*., p. 858).  Dr. Krishnamuathi did not respond to the inquiry about lifting/carrying restrictions, nor did he list any shoulder or knee impairments in his response to the ALJ.  (*Id*., pp. 856, 862).

As Plaintiff argues, there is no clear indication that the ALJ provided medical records to Dr. Krishnamuathi regarding the Plaintiff's shoulder impairments.  (ECF No. 15, p. 8).  In his letter requesting Dr. Krishnamuathi's opinion, the ALJ wrote that he had enclosed a Compact Disc (CD) with exhibits "selected for inclusion in the record" of this case and a list of said evidence.  (ECF No. 12, p. 855).   The list of evidence sent to Dr. Krishnamauthi is, however, not attached to either the ALJ's letter or to the doctor's response.  (*Id*., pp. 843-854, 855-864).  The ALJ did not discuss Dr. Krishnamuathi's omission of knee and shoulder impairments in his decision, and he did not afford Dr. Krishnamuathi's opinion less weight because the doctor did not consider all of Plaintiff's impairments.  (*Id*., p. 39).  As Plaintiff had undergone surgery on her right shoulder just five months before Dr. Krishnamuathi offered his assessment, and she was scheduled for a knee replacement surgery later that same month, his failure to find any impairment of either the knee or shoulders is clearly inconsistent with the treatment record.

Of additional concern to the undersigned is the format and lack of analysis in Dr.

7

Krishnamuathi's assessment. Dr. Krishnamuathi was sent a check-box form, which he did not even fully complete, and he failed to identify any particular medical records or clinical findings to support his assessments and limitations, leaving blank every portion of the form which specifically asked for such support. (*Id*., pp. 852-856). This paucity of analysis severely limits the evidentiary value of Dr. Krishnamuathi's opinion as the "checklist format, generality, and incompleteness of the assessments limit [the assessment's] evidentiary value." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). *See also Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (conclusory checkbox form has little evidential value when it cites no medical evidence and provides little or no elaboration).

While the ALJ did consider other opinion evidence, no other source was given more than some weight and each opinion was given prior to September of 2015. Non-examining medical consultants Dr. Jonathon Norcross and Dr. Martha Lauster provided RFC assessments in May and September 2015, respectively. (*Id*., p. 40). Both Dr. Norcross and Dr. Lauster found Plaintiff capable of performing light work, but limited Plaintiff to only occasional left overhead reaching. (*Id*., pp. 40, 122-124, 135-137, 152-155). The ALJ gave their opinions less weight, finding that the Plaintiff was more limited than determined by the state agency consultants. (*Id*., p. 40). The ALJ also considered the opinion of Dr. Michael Doubek, a consultative examiner who examined Plaintiff in February 2012 in connection with a previous disability application. (*Id*., pp. 35-36). This examination occurred two years before the relevant time period, and despite the ALJ's own finding that Plaintiff's impairments had worsened over time, the ALJ still afforded Dr. Doubek's opinion some weight. (*Id*., p. 36). Even with these flawed opinions, which were afforded only some weight, there is no RFC opinion evidence between September 2015 and the date of the ALJ's decision save for the incomplete check-box form provided by Dr. Krishnamuathi.

Accordingly, the undersigned finds that the ALJ's RFC determination is not supported by substantial evidence.

Plaintiff argues that the ALJ's decision should be reversed and benefits immediately awarded. (ECF No. 15, p. 18). However, this is a remedy which is appropriate only in cases where the record overwhelmingly supports an immediate finding of disability. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). After reviewing the record, the undersigned finds that a remand to more fully and fairly develop the record regarding Plaintiff's RFC is necessary.

On remand, the ALJ should request a complete RFC assessment from Plaintiff's treating orthopedic surgeon, Dr. Steven Smith, for the relevant period in question. If the ALJ is unable to procure an RFC assessment from Dr. Smith, the ALJ should order an orthopedic consultative examination, complete with a thorough RFC assessment.

With this additional evidence, the ALJ should re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocation expert any limitations that are indicated in the RFC assessments and supported by the evidence of record.

### IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE